UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

EDWARD M. HAMPTON,                )
                                  )
            Plaintiff,            )
                                  )
       vs.                        )   No. 2:15-cv-00135-WTL-MJD
                                  )
DICK BROWN, Superintendent, *et al.*, )
                                  )
            Defendants.           )

**Entry Discussing Motions for Summary Judgment and Directing Entry of Final Judgment**

Plaintiff Edward Hampton, who was at all times relevant to this action an inmate at Wabash Valley Correctional Facility ("Wabash Valley"), brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his Eighth and Fourteenth Amendment rights. The defendants are Dick Brown, Superintendent of Wabash Valley; Bruce Lemmon, Commissioner of the Indiana Department of Correction ("IDOC"); and Kevin Hunter, a Unit Manager at Wabash Valley. Mr. Hampton's claims are predicated on his reassignment from general population to the Restricted Movement Unit without a hearing. He maintains that the conditions of the Restricted Movement Unit, and the lack of process preceding his placement there, violate his constitutional rights.

Before the Court are the parties' cross-motions for summary judgment. The defendants responded to the plaintiff's motion for summary judgment in conjunction with the filing of their motion, but the plaintiff did not respond to their motion or otherwise reply. For the reasons explained in this Entry, the defendants are entitled to summary judgment on all of Mr. Hampton's claims.

# I.
## Cross-Motion for Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

"The existence of cross-motions for summary judgment does not, however, imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers*, 335 F.3d 643, 647 (7th Cir. 2003). Specifically, "[p]arties have different burdens of proof with respect to particular facts; different legal theories will have an effect on

which facts are material; and the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." *Id.* at 648.

## II.
## Factual Background

While the parties contest certain facts, all of the material facts are undisputed. At all times relevant to this action Mr. Hampton was an inmate incarcerated at Wabash Valley. In January 2015, officials at Wabash Valley converted one unit at the facility from a typical general population unit into a Restricted Movement Unit ("RMU"). Although the RMU imposes more restrictions on inmates than general population, it is considered to be a variety of general population instead of a segregation unit.

Unlike an administrative or disciplinary segregation unit at Wabash Valley where offenders eat alone in their cells, offenders in the RMU are permitted access to a common room for meals three times a day where they can eat with twenty-two other inmates. Also unlike segregation units, inmates in the RMU have cellmates. They can leave their cells upon request for a variety of reasons, such as access to medical facilities, meetings with counselors, and one-on-one religious services. They also have access to visitation, mail, and telephone services, one hour of recreation time per day, and access to law library materials by request in lieu of access to the law library itself. Placement in the RMU alone does not cause an inmate to lose earned credit time or otherwise increase the duration of an inmate's sentence.

Officials at Wabash Valley, including Superintendent Richard Brown, determined that converting a housing unit into the RMU would increase the efficiency, safety, and smooth operation of the facility. For example, maintaining the RMU could serve as a location to temporarily place inmates whose conduct required an excessive amount of attention from

correctional staff. But other inmates could also be placed in the RMU based simply on facility need if no general population spaces were available.

To select which inmates would be housed in the newly created RMU, Wabash Valley officials looked for inmates within general population to determine who merited placement there. Defendant Kevin Hunter is a Unit Team Manager at WVCF, and as such, asked his staff to make recommendations regarding which inmates would be suitable for the more restricted environment, especially by considering those inmates who had a history of conduct issues. Mr. Hampton was recommended for placement in the RMU to Mr. Hunter by his staff based on his history of conduct violations—specifically, Mr. Hampton had forty-two conduct violations at the time he was placed in the RMU, including four of the most severe type. Superintendent Brown approved the recommendation to place Mr. Hampton in the RMU. The placement was considered administrative rather than disciplinary because it had not been the direct result of a conduct violation.

Mr. Hampton was moved to the RMU on January 16, 2015. A review board conducted periodic review of inmates' placement in the RMU. During his second placement review in May 2015, all five staff members on the review board recommended that he be transitioned back to general population. Mr. Hampton left the RMU for general population once a bed became available on May 29, 2015.

### III.
### Discussion

The Court screened Mr. Hampton's complaint pursuant to 28 U.S.C. § 1915A and permitted his Fourteenth Amendment and Eighth Amendment claims to proceed against the defendants. For the reasons explained, the defendants are entitled to summary judgment on both of Mr. Hampton's claims.

### A. Fourteenth Amendment Procedural Due Process Claim

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "In *Sandin v. Conner*, 515 U.S. 472 (1995), the Court explained that the Fourteenth Amendment provides to inmates a liberty interest in avoiding transfer to more restrictive prison conditions if those conditions result in an atypical and significant hardship when compared to the ordinary incidents of prison life." *Townsend v. Cooper*, 759 F.3d 678, 685 (7th Cir. 2014) (citations and quotation marks omitted). "In assessing whether disciplinary segregation amounts to a constitutional violation, this court looks to 'the combined import of the duration of the segregative confinement *and* the conditions endured.'" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quoting *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)); *see Earl v. Racine Cnty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013) ("When an inmate is placed in conditions more restrictive than those in the general prison population, whether through protective segregation like suicide watch or discretionary administrative segregation, his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time."). "Although relatively short terms of segregation rarely give rise to a prisoner's liberty interest, at least in the absence of exceptionally harsh conditions, such an interest may arise from a long term of confinement combined with atypical and significant hardships." *Id.*; *see Kervin v. Barnes*, 787 F.3d 833, 837 (7th Cir. 2015) (noting that a "considerably shorter period of segregation [than six months] may, depending on the conditions of confinement and on any additional punishments, establish a [due process] violation").

The Court must analyze both the conditions and duration of Mr. Hampton's placement in the RMU to determine if he had a liberty interest associated with that placement. Beginning with the duration, it is undisputed that Mr. Hampton was in the RMU from January 16, 2015, through May 29, 2015—which is approximately four-and-a-half months. This is a relatively short amount of time. *See, e.g.*, *Marion*, 559 F.3d at 697 ("[S]ix months of segregation is not such an extreme term and, standing alone, would not trigger due process rights."). But as noted above, the duration must not be considered in a vacuum; the Court must consider "the combined import of the duration of the segregative confinement *and* the conditions endured.'" *Hardaway*, 734 F.3d at 743 (citation and quotation marks omitted).

Turning to the conditions, the undisputed evidence shows that in January 2015 officials at Wabash Valley decided that an "additional control unit in general population would assist in the smooth and safe operation of the facility." Filing No. 91-4 at 1. The RMU is "something of a hybrid between a traditional general population area and administrative or disciplinary segregation." *Id.* at 2. Unlike in more restrictive segregation units, in the RMU Mr. Hampton had a cellmate, was permitted to eat in a group of twenty-two inmates in a common room three times per day, could move out of his cell to access medical facilities, meet with counselors, and receive one-on-one religious services by request, had access to visitation, mail, and telephone services, had one hour of recreation time per day either outdoors or in an indoor gym, and could have religious texts. *Id.* at 2; *see also* Filing No. 91-3 at 7, 10, 14-15. He could not physically go to the law library, but could obtain any materials from the law library upon request. *See* Filing No. 91-3 at 19.

The deprivations caused by Mr. Hampton's transfer to the RMU about which he complains are consistent with the defendants' evidence regarding the conditions in the RMU. Specifically,

he points out that his placement in the RMU deprived him of group religious services, his prison job, certain education and substance abuse programs, and the ability to physically go to the law library to use the computers. Filing No. 91-3 at 11, 15.

Mr. Hampton undoubtedly lost some privileges due to his transfer to the RMU, but the conditions of the RMU were certainly not inordinately harsh relative to the conditions of general population. It would require significantly harsher conditions to implicate a liberty interest. *See, e.g.*, *Earl*, 718 F.3d at 691 (collecting cases where liberty interests were implicated when the conditions included being "denied human contact and subjected to lights during every hour of confinement"; "denied any bedding or clothing and deprived of nearly all human contact or sensory stimulation"; or had "severe limitations on contact with others, showers, exercise, attorney visits, and access to personal property"). Mr. Hampton had a cellmate, and ate his meals with other prisoners. He was not denied basic items such as bedding or clothing. And although the RMU was more restricted than general population, Mr. Hampton had access to religious texts, law library materials, one-on-one religious services, and daily exercise. It is doubtful that these conditions would be considered "an atypical and significant hardship when compared to the ordinary incidents of prison life," *Townsend*, 759 F.3d at 685, regardless of how long Mr. Hampton was subject to them. But certainly four-and-a-half months in such conditions is insufficient. Accordingly, Mr. Hampton did not have a liberty interest in avoiding transfer to the RMU and thus was not entitled to process before this reassignment occurred.

Two of Mr. Hampton's argument to the contrary are worthy of note. To the extent that Mr. Hampton complains that the defendants violated IDOC regulations or state law by placing him in the RMU or by doing so without a hearing, neither IDOC regulations nor state law create a liberty interest. Although statutory and regulatory language used to be relevant in an analysis of whether

a liberty interests exists, the Supreme Court in *Sandin* "abandoned th[is] methodology . . . , shifting the focus of the liberty interest inquiry away from the nature of the statutory and regulatory *language* and toward the nature of the *deprivation* actually suffered by the prisoner." *Lekas v. Briley*, 405 F.3d 602, 607-08 (7th Cir. 2005).

Mr. Hampton also discusses at length which defendant was responsible for his placement in the RMU and the fact that he was not given a hearing before he was placed there. But because Mr. Hampton did not have a liberty interest in his transfer from general population to the RMU, he was not entitled to any hearing or other process, and it is thus irrelevant which defendant was ultimately responsible for the decision, as there was no constitutional violation. Accordingly, the defendants are entitled to summary judgment on Mr. Hampton's Fourteenth Amendment procedural due process claim, and Mr. Hampton's cross-motion on this claim must be denied.

### B.     Eighth Amendment Cruel and Unusual Punishment Claim

The Eighth Amendment provides in relevant part that "cruel and unusual punishments [may not be] inflicted." U.S. CONST. amend. VIII. A prison official violates the Eighth Amendment's prohibition on cruel and unusual punishment when the official's act or omission results "in the denial of the minimal civilized measure of life's necessities," and the official committed the act or omission with "deliberate indifference" to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation and quotation marks omitted); *see Townsend*, 759 F.3d at 687. For similar reasons discussed above with respect to Mr. Hampton's Fourteenth Amendment claim, he cannot establish that he was denied life's necessities.

The Seventh Circuit has held that life's necessities at least include adequate shelter, heat, hygiene items, clothing, sanitation, bedding, and utilities. *See Townsend*, 759 F.3d at 687; *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). The undisputed evidence reveals that Mr. Hampton

was not denied any of these things in the RMU. The defendants are therefore entitled to summary judgment on his Eighth Amendment claim, and Mr. Hampton's cross-motion is denied.

## IV.
## Conclusion

For the reasons stated above, the defendants' motion for summary judgment [dkt. 90] is **granted**, and the plaintiff's motion for summary judgment [dkt. 79] is **denied**.

Final judgment consistent with this Entry shall issue.

**IT IS SO ORDERED**.

Date: 1/30/17

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

EDWARD M. HAMPTON
988987
2540 1/2 Weisser Park Ave.
Fort Wayne, IN 46803

Electronically Registered Counsel